STEAGALL, Justice.
Lum Oil Company, Inc., appeals from a judgment based on a jury verdict in favor of the defendants, William and Doris Hand-ley. We affirm.
Lum Oil is a bulk gasoline distributor. The Handleys operated a small store selling groceries, bait, and gasoline. Lum Oil began supplying gasoline to the Handleys in 1979 and continued to do so until approximately February 1981. Around this same time in 1981, the Handleys leased their store to Dewey Breed. Breed received gasoline from Lum Oil for several months; then he ceased doing business with Lum Oil. Allen Calvert, a driver for Lum Oil, usually delivered gasoline to the Handleys and then to Breed.
Lum Oil filed a suit against the Handleys for the collection of an open account in the amount of approximately $17,000. The Handleys’ defense was that they had paid the money, but that an employee of Lum Oil apparently stole it. Lum Oil filed a motion in limine requesting that the trial court prohibit the Handleys from presenting without proof any opinion evidence or assertions that the money in question was misappropriated by a Lum Oil driver. The trial court denied the motion in limine, but stated it would not let “just any testimony” into evidence without some facts to support it.
During the trial, Lum Oil moved for a mistrial because the trial court allowed Breed to testify, over Lum Oil’s objection, that he had made a complaint to Lum Oil concerning one of its employees, Calvert. The motion for mistrial was denied. The jury returned a verdict in favor of the Handleys and Lum Oil filed a motion for new trial, which was denied by operation of law. See Rule 59.1, A.R.Civ.P.
Lum Oil argues that the trial court erred in allowing Breed to testify that Calvert had shorted him 300 gallons of gasoline and that he had made a complaint about *256 Calvert to Lum Oil. Lum Oil asserts that this is character evidence, which is inadmissible to prove that Calvert stole money that the Handleys had given him as payments to Lum Oil.
During the direct examination of James Lum, one of the owners of Lum Oil, the following occurred:
“Q. Have you ever at any time in your twenty-four years had an instance where — another instance where a buyer claimed that your drivers were stealing any money?
“MR. DONALDSON: Judge, I object to that, that has no bearing on any issue in this case.
“COURT: Sustained.
“Q. (Mr. Selman) Let me ask you this— at any time in your twenty-four years have you ever been forced to dismiss a driver for theft?
“MR. DONALDSON: Judge, I object to that on the same grounds — irrelevant, incompetent, immaterial, has no bearing on the issues in this case.
“COURT: Overruled.
“Q. Have you ever at any time during your twenty-four years ever been forced to fire a driver for stealing money from an account?
“A. Yes, I have.
“Q. All right, was that in this instance?
“A. No.
“Q. Did you have to fire at any time this driver for taking any funds of any person?
“MR. DONALDSON: Object on the same grounds — this is not a proper ...
“COURT: Sustained.”
During the cross examination of Mr. Lum, the attorney for the Handleys asked several questions from which the jury could infer that drivers or other employees of Lum Oil could have taken the money. A few questions were asked about Calvert; specifically, was he the driver that delivered gasoline to the Handleys and where was he currently employed?
The following are some of the questions that were asked on redirect examination of Mr. Lum, after which Lum Oil rested its case:
“Q. Mr. Lum, Mr. Donaldson has asked you a good bit about Allen Calvert. What was the occasion for him leaving your employment?
“A. He felt like he needed more money or he needed a better job or a better paying job than the one he had. He has two children born recently here, two or three years apart, something like that.
“Q. And he had a job offer that paid more money?
“MR. DONALDSON: Judge, I object to that, as far as leading the witness.
“Q. (Mr. Selman) Let me ask it in another way. Did he gain new employment?
“A. Yes, sir.
“Q. (Mr. Selman) When Mr. Calvert left what was y’alls relationship — was it good or bad?
“A. It was good.
“Q. (Mr. Selman) Let me rephrase the question, if I may. Mr. Lum, have you ever had any complaint from any of your customers that Allen Calvert was stealing from you?
“MR. DONALDSON: Object, same grounds.
“COURT: Overruled.
“A. No.”
The Handleys’ first witness was Breed, who testified that on one occasion Calvert had shorted him 300 gallons of gasoline and that he had made a complaint about this to Lum Oil, specifically Mr. Lum. The Handleys assert that Breed’s testimony was offered in order to impeach or contradict Mr. Lum’s testimony that he had never received any complaints about Calvert stealing from Lum Oil.
In a civil action, it is a general rule that a party’s good or bad character with regard to a certain activity may not be introduced into evidence in order to show “that, on the occasion in question, he acted in keeping with that character.” C. Gam *257 ble, McElroy’s Alabama Evidence § 34.01 (3d ed. 1977); see Smith v. Civil Service Board of City of Florence, 52 Ala.App. 44, 289 So.2d 614 (1974). However, character and reputation evidence may be admitted for impeachment purposes. Bracy v. Sippial Electric Co., 379 So.2d 582 (Ala.1980).
In the instant case, Mr. Lum testified on direct examination that he had never received any complaints about Calvert stealing from him. Thereafter, the Hand-leys used the testimony of Breed to show that Mr. Lum had received a complaint about Calvert. Although the complaint was not specifically related to stealing money, it was related to theft in general, which is the way the question to Mr. Lum was phrased. Accordingly, without deciding whether the testimony of Breed was character evidence, we hold that the trial court properly admitted the testimony of Breed for impeachment purposes.
AFFIRMED.
JONES, SHORES, ADAMS and HOUSTON, JJ., concur.